**Inderjit BADHWAR, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF the AIR FORCE, et al., Defendants.**

**Civ. A. No. 84–0154.**

United States District Court, District of Columbia.

March 6, 1985.

---

Isaac N. Groner, Raymond D. Attocchi, Judith E. Olingy, Steven F. Korostoff, Cole & Groner, P.C., Washington, D.C., for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. DiGenova, U.S. Atty., Barbara Gordon, Catherine J. Lanctot, Attys., Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

Plaintiffs are investigative reporters interested in learning and writing about the military's air accident investigation program and action taken pursuant to that program. Defendants are the Departments of the Army, Air Force and Navy, under whose authority these investigations are conducted. The plaintiffs seek three different types of documents from each of the defendants: (1) accident reports relating to particular incidents; (2) all recommendations in accident reports since 1950; and (3) Annual Accident Safety Reports for specified years.[1] Defendants claim that evidence and reports of military air crashes are exempt from disclosure pursuant to Exemption 5 of the Freedom of Information Act, 5 U.S.C. § 552(b)(5). They also defend the Air Force's refusal to waive the fee chargeable to those who request documents under FOIA. 5 U.S.C. § 552(a)(4)(A).

### II.

The documents that have been withheld by the defendants consist of various portions of so-called "safety reports."[2] Each Department prepares two types of accident reports: one type, known as the safety report, is kept secret; the other type, known as the collateral report, is normally released.[3]

Each safety report is the work of a board appointed to investigate an accident. To induce witness candor, regulations authorize, if not require, each board to promise that witness statements will be received and kept in confidence. The Navy and the Air Force, and to a lesser extent the Army, routinely promise confidentiality to witnesses. Exceptions are made where, for example, the Jencks Act requires production of a witness statement to a person charged with a crime in connection with an accident, or where Congress requests access to the statements, as well as where the regulations are not strictly honored. Thus, in some instances statements have been taken with a specific pledge of confidentiality. Some statements have been made available to unauthorized readers.

A safety report typically includes witness statements, other documentary and photographic evidence, findings, conclusions and recommendations. When a safety board completes a report, it is forwarded to the appointing authority for distribution to those responsible for taking any corrective action recommended by the board. A safety board does not take action itself; its end product is typically a recommendation. *Compare* Defendants' Statement of Material Facts No. 18 & No. 27 *with* Plaintiffs' Response to Defendants' Statement of Material Facts No. 27.

The authority that creates the safety board also commissions a "collateral investigation." The collateral investigators prepare an account of the accident and a collection of evidence for use in disciplinary proceedings, civil litigation, and for all other purposes other than accident prevention and aviation safety. The collateral investigation is conducted by personnel not in-

---

1. The cross-motions for summary judgment submitted by the parties were redacted at the suggestion of the Court. They do not address the questions of whether the defendants must produce documents reflecting (1) military accident rates or (2) implementation or rejection of recommendations for corrective action. An accompanying order will set a conference, at which the Court will, among other things, schedule further proceedings on these issues.

2. The Army has released virtually all of its safety reports (including witness statements), except for certain findings, recommendations and conclusions. The Air Force has released less than the Army and has also refused to disclose witness statements. The Navy flatly asserts that its safety reports are exempt from disclosure.

3. *See Cooper v. Department of the Navy,* 558 F.2d 274, 275–76 (5th Cir.1977), *modified on rehearing,* 594 F.2d 484 (5th Cir.1974), *cert. denied,* 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979). The safety reports issued by the Air Force and the Navy are known as Mishaps Investigation Reports. The Army's safety reports are known as Aircraft Accident Investigation Reports or Mishap Reports.

volved in the safety investigation. These investigators have access to the evidence and witnesses presented to the safety board. In addition, the collateral investigators put witnesses under oath and give them no pledge of confidentiality. The collateral report is, in effect, a version of the safety report, expurgated for public consumption. *See* Defendants' Statement of Material Facts No. 19.

Plaintiffs contrast the openness of civilian aircraft accident investigations conducted by the National Transportation Safety Board (NTSB) and the relative success of civilian authorities in reducing the civilian aircraft accident rates, with the relatively high rate of accidents involving military aircraft where secrecy is the theme. To confirm their hypothesis that the military policy of secrecy with respect to accident investigation has been counterproductive, plaintiffs seek disclosure of about 17 specific safety reports, as well as some reports about unspecified, similar accidents and all other documents generated since 1950 which reflect safety recommendations.

The parties have filed cross-motions for summary judgment in response to the Court's suggestion that they focus the issues in the context of a discrete sample of documents. These motions frame as an issue the defendants' obligation to produce in full three specific safety board reports, one from each defendant,[4] together with the findings, conclusions, recommendations sections, and witness statements from the report about the C–5A crash near Saigon on April 4, 1975. Plaintiffs also request the Court to require defendants to segregate and disclose factual statements in documents that are found to be generally exempt. Finally, plaintiffs challenge as arbitrary and capricious defendants' decision not to waive document production fees. Defendants take the position that the public interest is not served by the inquiry of these investigative reporters into the effec-

tiveness of the defendants' policy of imposing secrecy on military aircraft accident safety reports.

## III.

### A.

■ Plaintiffs' core request is for the witness statements furnished to the safety boards. Recognizing that a recent Supreme Court decision bars disclosure of statements by witnesses who have given them in confidence, plaintiffs claim that defendants have failed to carry their burden of proving that the defendants gave such a specific pledge to each witness who gave a statement. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984).

There is apparent agreement between the parties that the Army is sparing in its pledges of confidentiality and that as a corollary the Army has released substantially more witness statements than have the Air Force and the Navy. Defendants further point out that Air Force and Navy regulations require that such assurances be given to all witnesses appearing before safety boards and that therefore there is a presumption of regularity that these regulations are honored by the Departments which issued them. The regulations and this presumption establish that witness statements would not be routinely discoverable.

Plaintiffs cite incidents where witness statements are in fact disclosed. For example, such statements are produced for criminal defendants in response to Jencks Act requests. Persons who contributed causally to an accident are furnished access to the entire safety report, presumably including witness statements, albeit under protective procedures. Some witnesses do not recall being given a specific pledge of confidence. And, of course, Congress has

---

**4.** Specifically, the plaintiffs seek the Air Force safety report for the August 5, 1981 crash of an F–16, the Army safety report for the September, 1982 crash of a CH–47 helicopter in Mannheim, West Germany, and the Navy safety report for a

1974 helicopter crash in the Mediterranean Sea near Crete. The Navy report has already been sought unsuccessfully by another plaintiff, and has been held to be exempt from disclosure. *See Cooper v. Department of the Navy, supra.*

access to the safety reports.[5] However, none of these incidental deviations from the course of conduct required by the regulations justifies a different conclusion with respect to release of individual witness statements. "The test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *United States v. Weber Aircraft Corp., supra,* at 1493 (quoting *FTC v. Grolier, Inc.,* 462 U.S. 19, 103 S.Ct. 2209, 2214, 76 L.Ed.2d 387 (1983)). The regulations, the apparent practice, and the rather common knowledge of it, satisfy the defendants' burden under the doctrine of *United States v. Weber Aircraft Corp., supra,* and *Machin v. Zuckert,* 316 F.2d 336 (D.C.Cir.), *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963), which establish that witness statements are not routinely discoverable. Accordingly, the witness statements sought by plaintiffs are exempt from disclosure.[6] To hold otherwise would be to risk stifling witness cooperation in the future, since the prospect that a court would have the final say as to whether a guarantee of confidentiality had actually been given would reduce the reliability of such pledges. *See United States v. Weber, supra,* 104 S.Ct. at 1495 n. 23; *Cooper v. Department of the Navy, supra,* at 277; *Brockway v. United States Air Force,* 518 F.2d 1184, 1193–94 (8th Cir. 1975); *see also* Larson Declaration at ¶ 14; Breast Affidavit (June 13, 1984) at ¶ 10.

### B.

■ Plaintiffs also request the findings, conclusions and recommendations of the safety boards, essentially on the theory that these are the final actions of the safety boards and, therefore, final agency action. Defendants respond that these findings, conclusions and recommendations are not final agency actions because safety boards do not take final agency action. According to defendants, those who appoint the safety boards and receive their reports make the decisions about what action the department takes on the basis of the findings, conclusions and recommendations of the safety boards. Defendants maintain that the give and take that characterizes the safety investigation is inherently deliberative and that the safety reports are, by definition and by necessity, predecisional. *See Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). Plaintiffs' riposte is that if the safety boards' findings, conclusions and recommendations with respect to the particular accident here at issue are predecisional, then plaintiffs are entitled to "the findings of the ultimate decisionmaker, whoever that is." Plaintiffs' Memorandum on Count I at 14. Plaintiffs do not dispute that the safety investigation is deliberative.

Considering the work of the safety boards and the administrative context in which they function, defendants have established and plaintiffs concede that the safety boards merely propose; others dispose. *See* McGlade Declaration at ¶¶ 11, 21 & 40. Thus, those who act on the findings, conclusions and recommendations of the safety boards "have discretion to follow the opinions [of the safety boards] or not, based on their persuasive value rather than their character as working law...." *Brin-*

---

**5.** Although Congress has reserved to itself the right to receive such reports and may actually have received them, "no waiver occurs of the privileges and exemptions which are available to the executive branch under the FOIA with respect to the public at large." *Murphy v. Department of the Army,* 613 F.2d 1151, 1156 (D.C. Cir.1979).

**6.** Because Exemption 5 applies even assuming that some witnesses do not anticipate that their statements will be held in confidence, there is no reason to permit plaintiffs' proposed discovery to establish the factual accuracy of that assumption. Plaintiffs' suggestion that this inquiry would provide a basis for overturning the *Machin* privilege is also ill-founded. The Supreme Court has explicitly observed that "the *Machin* privilege ... has been well-settled for some two decades...." *United States v. Weber Aircraft Corp., supra,* at 1494. Moreover, the Court stated in *Weber* that "since the *Machin* privilege is well recognized in the case law as precluding routine disclosure of [witness] statements, the statements are covered by Exemption 5." *Id.* at 1493.

*ton v. Department of State,* 636 F.2d 600, 605 (D.C.Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); *see also Murphy v. Department of the Army, supra,* at 1154 n. 9; *American Federation of Government Employees v. Department of the Army,* 441 F.Supp. 1308, 1313 (D.D.C.1977).

This case is analogous to *Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975). The plaintiff in that case sought documents generated by Regional Boards and by individual members of the Renegotiation Board itself. The Court observed that the Regional Boards and individual board members could, like the safety boards in this action, merely recommend conclusions for acceptance or rejection and then held that the reports of those recommendations were properly withheld as deliberative documents. *Id.* at 184–91, 95 S.Ct. at 1500–04. This case differs from *Renegotiation Board* only because here the defendants have not identified a particular final decisionmaker; that distinction does not, however, make the safety boards' deliberations any less "predecisional." Thus, "the agency's decisionmaking mechanisms and the documents' significance within that structure," *Murphy v. Tennessee Valley Authority,* 571 F.Supp. 502, 505 (D.D.C.1983), establish that, in the large, the safety board findings, conclusions and recommendations are deliberative, predecisional, and exempt from disclosure under Exemption 5. *See Weber Aircraft Corp. v. United States,* 688 F.2d 638, 644 (9th Cir.1983), *rev'd on other grounds,* 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984).[7]

■ Normally, in controversies like this, a large disclosure issue would remain with

respect to particular facts stated in the reports. It is well-established that an agency resisting disclosure of an entire document or category of documents remains obligated to segregate factual portions, disclosure of which would not be barred. 5 U.S.C. § 552(b); *see also Mead Data Central, Inc. v. Department of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977). The Army and the Air Force have already segregated and disclosed facts stated in the safety board reports, both in collateral reports and supplemented excerpts. *See* Larson Declaration at ¶ 19; Ivey Declaration (June 13, 1984) at ¶¶ 8–9; Ivey Declaration (November 14, 1984) at ¶¶ 2–3; Crawford Declaration (November 16, 1984) at ¶¶ 2–3.

The Navy argues that the facts which are segregable from the safety reports are available in the collateral report that it furnishes. The Navy has also filed an externally plausible affidavit that the collateral reports contain all material facts about the several accidents. Breast Declaration (June 13, 1984) at ¶ 22. But that is the Navy's version of what is material and it is unclear what criteria of materiality it applied. Counsel for the defendants has also stated on behalf of the Navy:

> As a policy matter, the Navy will not turn over any material in the [safety reports] which reflects the deliberative process. . . .

Defendants' Reply on Count I at 23. Moreover, the Navy takes the position that "rational segregation" of the material in its safety report is not "possible." Defendants' Memorandum on Count I at 23; *see also* Breast Declaration (June 13, 1984) at ¶ 9. According to counsel:

> Many of the factual matters contained in a safety report reflect a choice by acci-

---

7. The mere fact that defendants choose to release collateral reports does not mean that defendants concede the finality of those decisions and, by analogy, the finality of the safety reports. Plaintiffs offer no support for their assertion that "[i]t is beyond dispute that the final reports of the NTSB and the Collateral Boards are not subject to Exemption 5, and are releasable under FOIA." Plaintiffs' Memorandum on Count I at 13. The defendants' decision to re-

lease the collateral reports is entirely consistent with the waiver of an exemption that might otherwise be asserted. Moreover, collateral reports are prepared with the understanding that they will usually be released, and thus do not implicate the confidentiality concerns raised by the deliberative process privilege. Similarly, the fact that the civilian NTSB releases its reports is inapposite—it is required to do so by statute. *See* 49 U.S.C. § 1901, *et seq.*

dent investigators to pursue or abandon a line of inquiry, and their inclusion or exclusion in the safety report could reflect the mental processes of the safety board in determining the cause of accident.

Defendants' Reply at 23–24. The Navy relies heavily on the Fifth Circuit's decision in *Cooper v. Department of the Navy, supra.* These generalities are not sufficient to carry the defendants' burden.

To resolve this issue, the Court will require the Navy to file, by a date certain, a detailed justification for the application of Exemption 5 to the safety report that is the subject of these cross motions. *See Mead Data Central, Inc., supra,* at 260–62; *Pacific Architects and Engineers, Inc. v. Renegotiation Board,* 505 F.2d 383, 385 (D.C. Cir.1974). In addition, an order accompanying this memorandum will schedule a conference to which the Navy will bring copies of the relevant safety report and the collateral report. Before the conference, the Navy will mark by underlining in color on the copy of the safety report each factual statement which does not appear in the collateral report, and underline in another color each such factual statement the disclosure of which would compromise the deliberative process. At that conference, the Court will determine whether *in camera* comparison of these documents is indicated and, if so, excuse plaintiffs' counsel from the conference so that such an *in camera* examination can proceed. *See Mead Data Central, Inc., supra,* at 262 n. 59.

### C.

The parties have narrowed their differences about autopsy reports and related documents. Plaintiffs do not now seek medical or personal information, and have indicated that they will withdraw their request if defendants review each document involved and then represent that the documents contain only personal information. Plaintiffs do, however, seek any information in those reports relating to the cause of the accident or to safety. Defendants resist on the theory that any statement in the autopsy reports revealing such information would run afoul of Exemption 5's protection of deliberative material. Defendants do not suggest that the information obtained for the autopsy reports was obtained under any pledge of confidentiality and it is not immediately apparent how information in an autopsy report about the cause of the accident or about safety considerations is deliberative.

An accompanying order will require the defendants to prepare a detailed justification for the application of Exemption 5 to the autopsy reports and related documents that are the subject of these cross motions, or to file a statement of the kind that plaintiffs have represented will lead them to withdraw their request. Before the conference to be scheduled, the defendants should mark copies of the autopsy reports to identify material relating to the cause of the accident and safety information which is claimed to be deliberative; the marked copies should be brought to the conference, where the Court will determine if *in camera* review is in order.

### D.

The Air Force seeks protection of technical reports and engineering evaluations furnished to safety boards by aircraft manufacturers,[8] claiming that these reports are "commercial," and thus protected by Exemption 4. The Air Force also claims that such documents may be withheld under Exemption 5's deliberative process privilege. According to defendants, release of these reports would impair the government's ability to obtain necessary information in the future and would competitively disadvantage the manufacturers involved.

Under Exemption 4, information need not be disclosed if it is (1) commercial or financial; (2) obtained from a person; and (3) privileged or confidential. *Public Citizen*

---

**8.** Plaintiffs acknowledge that the Army has not withheld such materials, but are not certain whether the Navy has or not.

*Health Research Group v. FDA,* 704 F.2d 1280, 1290–91 (D.C.Cir.1983). There is no dispute that the information that the plaintiffs seek to obtain was submitted by a "person." Thus, the threshold inquiry is whether these technical and engineering evaluations would reveal "commercial or financial" information. When the term "commercial" is given its ordinary meaning, *see Washington Post Co. v. United States Department of Health and Human Services,* 690 F.2d 252, 266 (D.C.Cir.1982), it applies to the documents at issue here. A manufacturer's candid assessment of the performance of its product may well affect its ability to market that product.

█ There remains a dispute as to whether the technical reports are confidential. Commercial information is confidential under Exemption 4 "if disclosure is likely '(1) to impair the Government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Washington Post Co., supra,* at 269 (quoting *National Parks & Conservation Association v. Morton,* 498 F.2d 765, 770 (D.C. Cir.1974) (footnote omitted)). It is not clear that disclosure of a highly specific technical document would implicate either of these concerns. *See* Battocchi Declaration, Exhibit 6. Nevertheless, the Air Force's General Larson asserts in his declaration that contractors are induced to provide such technical reports by promises of confidentiality and that "[r]elease of this type of information outside of the defined flight safety channels would effecively 'dry up' one of the most productive sources of information we have for preventing future accidents...." Larson Declaration at ¶ 15. In contrast, Francis McGlade, former Director of Safety for the Army, declares that promises of confidentiality are not needed to obtain the information contained in the technical reports. McGlade Declaration at ¶¶ 34–36. Regardless of whether Mr. McGlade has personal knowledge of the Air Force's need for confidentiality, it is clear that General Larson's conclusory assertion of confidentiality is "unacceptable and can-

not support [the Air Force's] decision to withhold requested documents." *Public Citizen Health Research Group v. FDA, supra,* at 1291. The insufficiency of the evidence on this point does not, however, mean that the Air Force will never be able to establish its Exemption 4 claim. *See Washington Post Co., supra,* at 269. To resolve this issue, the Court will require the defendants to submit, by a date certain, a detailed justification that will permit the Court to determine whether the test for confidentiality under Exemption 4 has been satisfied. *See id.; Pacific Architects & Engineers, Inc., supra,* at 385.

The defendants also claim a deliberative process privilege for the reports. The conclusory statements supporting this proposition do not reveal why non-deliberative statements cannot be segregated from the assertedly deliberative elements. Therefore, the defendants should include with their Exemption 4 justification a detailed explanation of the extent to which Exemption 5 applies to these reports. In addition, at the conference to be scheduled in an accompanying order, the defendants should be prepared to present to the Court the technical reports that are the subject of the cross motions. The portions which are supposedly covered by Exemption 4 should be marked in one color ink, while parts to which Exemption 5 allegedly applies should be marked in another. If *in camera* inspection is indicated, the Court will excuse plaintiff's counsel from the conference.

### E.

█ Several other issues presented by the redacted cross motions can be disposed of briefly. Plaintiffs claim that the defendants must release documents reflecting safety information that 49 U.S.C. § 1442(c) requires the military to provide to the Administrator of the Federal Aviation Administration and the NTSB. However, 49 U.S.C. § 1905(a), which concerns public access to information received by the NTSB, specifically states that "[n]othing contained in this section shall be deemed to require

the release of any information described by subsection (b) of section 552 of Title 5 [the FOIA exemptions]....'' Accordingly, transmittal of military safety information to the NTSB does not render the affected materials disclosable.

Plaintiffs also seek the accident reports made available to the litigants in *Machin v. Zuckert, supra.* The defendants represent that the Air Force will release these documents when the plaintiffs pay the required fees. Since the Court concludes below that the Air Force abused its discretion in failing to waive these fees for the plaintiffs, there is no barrier to production of these documents.

■ The defendants have released a number of documents that were originally marked with the words "For Official Use Only" (FOUO). *See* Larson Declaration at ¶ 19. The defendants claim that the stamp is an internal administrative marking and that Exemption 2 permits the Air Force to remove such markings before releasing the affected documents. Exemption 2 applies to documents "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The FOUO stamp indicates how particular documents should be handled and is therefore "designed to establish rules and practices for agency personnel." *Crooker v. Bureau of Alcohol, Tobacco and Firearms,* 670 F.2d 1051, 1073 (D.C.Cir.1981) (en banc). The stamp is also "predominantly internal" since it is not a source of "secret law" that has the effect of regulating public behavior. *Id.* at 1075. The defendants have not suggested, by affidavit or otherwise, that disclosure of the FOUO stamp "significantly risks circumvention of agency regulations or statutes." *Crooker, supra,* at 1074. *Compare Allen v. CIA,* 636 F.2d 1287 at 1290 n. 20 ("Disclosure of filing and routing instructions, of course, would not cause such 'circumvention of agency regulations.' ''). However, the plaintiffs have not explained why the public has an interest in seeing these apparently trivial administrative markings, particularly where the defendants' affidavit identifies the documents from which the stamps have been removed. In the absence of a showing of legitimate public interest, the FOUO markings need not be disclosed. *See Founding Church of Scientology of Washington, D.C. v. Smith,* 721 F.2d 828, 830 n. 4 (D.C.Cir.1983).

Finally, defendants have not responded to plaintiffs' arguments that an agency cannot withhold admittedly public documents—in this case, the material that the Fifth Circuit Court of Appeals ordered disclosed in its modification of *Cooper v. Department of the Navy, supra.* There appears to be no reason to withhold material that has been placed in the public record during the course of litigation. The defendants are required to disclose the publicly available documents sought by plaintiffs.

IV.

■ The Air Force and the Army have claimed no exemption for many documents sought by plaintiffs, and have expressed their willingness to make them available. The Air Force has conditioned its disclosure of these documents upon payment of the fee generally charged by government agencies for producing copies of documents requested on authority of FOIA. Plaintiffs have declined to pay the fee. They invoke a provision of FOIA which provides:

> Documents shall be furnished without charge or at a reduced charge where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can be considered as primarily benefiting the general public.

5 U.S.C. § 552(a)(4)(A).

The Air Force regulation pertinent to fee waivers states that:

> (a) The Air Force supports the principle that the general public should have reasonable access to records. Fees must not be used to discourage requests.
>
> *     *     *     *     *     *
>
> (d) The decision to waive or reduce fees that are more than $30 must be made on a case-by-case basis, by the

FOIA manager. As a general guide, fees are usually waived when any of these circumstances are met:

\* \* \* \* \* \*

(6) The request is from a member of the news media, whose requests are reasonable in scope and frequency. But, news media requesters may be charged fees when:

(i) Charges exeed $30;

(ii) Either the requested record doesn't contain information considered as primarily benefiting the general public, or the search for the record requires an excess amount of personnel time and adversely impacts on an organization's mission.

32 C.F.R. § 806.11.

Plaintiffs ask the Court to make *de novo* determinations that they are entitled to a waiver because a waiver would be in the public interest, and that furnishing to them the information they seek primarily benefits the public interest. In addition, plaintiffs seek a declaratory judgment that a Justice Department memorandum issued on January 7, 1983, and relied upon by defendants here in deciding whether to waive fees, is a *de facto* regulation published without compliance with the notice and comment requirement of the Administrative Procedure Act and is contrary to the requirements of FOIA.

Plaintiffs contend that review of the fee determination is governed by 5 U.S.C. § 552(a)(4)(B), which puts the burden of proof on defendants, rather than by the arbitrary and capricious test established by the Administrative Procedure Act, 5 U.S.C. § 703. They recognize, however, that district court decisions in this circuit apply an arbitrary and capricious standard of judicial review, *see, e.g., Eudey v. Central Intelligence Agency,* 478 F.Supp. 1175, 1177 (D.D.C.1979), and contend that even applying that standard the fees should have been waived.

In support of their claim for a waiver, plaintiffs point to the facts that they are journalists on the staff of Jack Anderson, and contribute to his widely published column. They have established their credentials and their bona fides by authoring and publishing several investigative articles in their own names. They sought the documents at issue in this case in connection with their investigation of safety practices in the military. An affidavit filed with the Court chronicles specific and disturbing instances where testimony about causes of an accident reflecting on military officers did not find its way into the collateral reports about the accident. Plaintiffs further demonstrate without contradiction that their means are limited and that the fee requirement has inhibited their requests for and use of documents that they might otherwise seek in pursuit of their investigation. Although investigative reporting is plaintiffs' occupation and they are gainfully employed, no evidence proffered could establish that they seek these documents primarily for personal gain.

The Air Force has refused to grant a waiver of a fee of $167.10 because it determined that in this case "benefit to the general public would not be the primary result [of waiver] when compared to the private interests of the requester." Complaint, Exhibit 1(0); *see also* McCormick Declaration at ¶ 5.[9] A review of the affidavits and other documents filed by plaintiffs demonstrates that, under any standard of

**9.** Defendants also suggest that the mere fact that the fee assessed in this case exceeds $30 gives the Air Force absolute discretion to demand payment as a condition to releasing documents. *See* Defendants' Reply Memorandum on Counts II and III at 12; 32 C.F.R. § 806.11(d)(6)(i). This interpretation is at odds with 5 U.S.C. § 552(a)(4)(A), which states that "[d]ocuments *shall* be furnished without charge or at a reduced charge where the agency determines that waiver or reduction of the fee is in the public interest …" (emphasis added). The statute limits the ultimate inquiry to the public interest, and does not contemplate the imposition of a monetary threshold beyond which that inquiry may be ignored. At most, the $30 amount fixed in the regulation sets a guideline beyond which the Air Force may demand information sufficient to establish that the request will benefit the general public. *See* 32 C.F.R. § 806.11(c). That information has been provided here.

review, this conclusion is untenable. Indeed, the Air Force's only response is that plaintiffs did not make the demonstration administratively that they have made here. But it is apparent that defendants knew, or should have known, who plaintiffs were, what they wanted, and why. The request identified plaintiff Badhwar as a reporter serving on the staff of Jack Anderson, and explained that he was investigating military safety practices with the intention of reporting on them. *See* Complaint, Exhibit 1(A).

The public interest in military aviation safety is apparent, as is the segment of the public that will benefit from the release of the documents—those who are interested in aviation news and those whose safety may be enhanced by public consideration of military accident investigation practices. *See* 32 C.F.R. § 806.11(c)(2). There was no basis when the request was submitted, and none now, for a conclusion that these journalists' requests were primarily to serve their private interests or that the information they seek is not a matter of public interest.[10] The refusal to waive a fee in this case was an arbitrary and capricious violation of 5 U.S.C. § 552(a)(4)(A) and 32 C.F.R. § 806.11.[11]

The Army still has plaintiffs' fee waiver under advisement. Plaintiffs contend that they are entitled to a waiver from the Army, just as they have received from the Navy, and just as the accompanying order will mandate for the Air Force. Although the waiver question has been pending since August 1983 (when an Army official asked plaintiffs' counsel to withdraw the fee request), plaintiffs have not claimed or demonstrated that action on their request has been unreasonably delayed. *Compare Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 79–80

(D.C.Cir.1984). It may well be that the Army has delayed, in part, in deference to these court proceedings. Now that the matter has been ventilated here, reciprocal deference between the Judiciary and the Executive requires that the Army be afforded a further brief opportunity to act on its own motion before the Court considers further intervention.

In view of the foregoing, there is no occasion to appraise the Justice Department memorandum of 1983.

### ORDER

Upon consideration of the parties' cross motions for summary judgment and the entire record in this case, and in accordance with the accompanying memorandum, it is this 6th day of March, 1985, hereby

ORDERED: that the defendants shall file, on or before March 29, 1985: (1) a detailed justification for the application of Exemption 5 to the safety report withheld by the Navy; (2) a detailed justification for the application of Exemption 5 to withheld autopsy and related reports subject to the cross motions before the Court or, alternatively, a statement of the kind plaintiffs have indicated would be acceptable to them on this issue; and (3) a detailed justification for the application of Exemptions 4 and 5 to technical reports and engineering evaluations that are subject to the cross motions before the Court; and it is further

ORDERED: that plaintiffs shall file, on or before April 12, 1985, any response to the detailed justifications filed by defendants; and it is further

ORDERED: that a conference shall be held at 2:00 P.M. on April 19, 1985, to which defendants will bring copies of (1) the Navy's safety and collateral reports; (2) autopsy reports and related documents;

---

**10.** The Air Force's original denial of plaintiffs' fee waiver request did not assert that the information requested was not a matter of public interest, but only that plaintiffs' private interests outweighed the benefit to the general public. Complaint, Exhibit 1(*o*). That conclusion is untenable, as is the notion that facts and other information pertaining to military aviation acci-

dents are not themselves matters of public interest.

**11.** In view of this conclusion, it is not necessary to reach the issue of whether reporters are presumptively entitled to fee waivers. The Court holds only that the plaintiffs in this action are entitled to such a waiver.

and (3) technical reports and engineering evaluations, color-coded as indicated in the accompanying memorandum; and it is further

ORDERED, ADJUDGED and DE-CREED: that the defendants shall release to plaintiffs: (1) the accident reports made available to the litigants in *Machin v. Zuckert*, 316 F.2d 336, 339 (D.C.Cir.), *cert. denied*, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963), and (2) requested documents admittedly in the public record; and it is further

ORDERED, ADJUDGED and DE-CREED: that the following are exempt from disclosure: (1) all withheld safety report witness statements; (2) the withheld findings, conclusions and recommendations of the Army and Air Force safety boards; and (3) "For Official Use Only" stamps appearing on requested and admittedly releasable documents; and it is further

ORDERED, ADJUDGED and DE-CREED: that the defendants' motion for summary judgment on Counts II and III be, and is hereby, DENIED; and it is further

ORDERED, ADJUDGED and DE-CLARED: that the Air Force's refusal to waive fees for the plaintiffs was arbitrary, capricious and an abuse of discretion.