**NATIONAL TREASURY EMPLOYEES UNION, Appellant**

**v.**

**William J. GRIFFIN, et al.**

**No. 85–5971.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 1986.

Decided Feb. 6, 1987.

Cary P. Sklar, with whom Lois G. Williams, Washington, D.C., was on brief, for appellant.

Melanie Ann Pustay, Atty., Dept. of Justice, for appellees. Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., were on brief, for appellees.

Before SILBERMAN and WILLIAMS, Circuit Judges, and JAMESON,[*] Senior District Judge.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

The National Treasury Employees Union ("NTEU") appeals a grant of summary judgment in favor of the United States Customs Service and individual customs officials. The Customs Service denied NTEU's requests for waivers or reductions of search and duplication charges relating to requests under the Freedom of Information Act, 5 U.S.C. § 552 (1982) ("FOIA" or the "Act"). We agree with the District Court that the Customs Service's actions were proper and therefore affirm.

## I. BACKGROUND

NTEU challenges the Customs Service's treatment of fees to be charged for three separate FOIA requests.[1] In the first, the union sought "[n]ames, positions, grades and steps of all Northeast Region employees who have received awards and/or bonuses from July 1980 through the present" and copies of such awards and bonuses. Joint Appendix ("J.A.") at 15. In the second, it asked for "[c]opies of all letters of complaint filed against the U.S. Customs Service, Northeast Region, from January 1980 through the present" and statistics

---

[*] Of the United States District Court for the District of Montana, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

1. Although the Customs Service refused to reduce or waive charges in a total of six NTEU requests, only three refusals are challenged in this appeal.

comparing these complaints with those in other regions. *Id.* at 17. In the third, it requested "[c]opies of *all* travel vouchers submitted by Northeast Region employees of the Labor Relations Office and the Regional Counsels [sic] Office which involved the administering of the National Agreement between NTEU and the Customs Service from July 1980 through the present." *Id.* at 20 (emphasis in original). In each of these requests, NTEU asked for a waiver of search and duplication fees but also expressed willingness to pay reasonable fees. The Customs Service's initial responses gave statements of the estimated charges and requested prepayment. *Id.* at 16, 18–19, 22. Only the response to the travel vouchers request addressed the union's fee waiver request, and it summarily denied it. *Id.* at 22.

NTEU administratively appealed the Service's refusals to waive search fees. In its appeal letter, it stated that information on awards and bonuses given to effective public employees "obviously benefits the general public." *Id.* at 31. It alleged a "unique ability" to distribute the awards information "not only to employees, but also to the public." *Id.* It also said that "complaints ... are of interest to the public since the release of such documents will improve Government efficiency and culpability." *Id.* at 30. The union's appeal letter stated that the travel vouchers were "plainly of interest to the general public" because they "clearly relate to how the N.E. Region of Customs expends Government funds." *Id.* Finally, it accused the Customs Service of attempting to discourage requests and to conceal inefficiency through imposition of excessive fees. *Id.* at 30–31.

In response to NTEU's administrative appeal, the director of the Service's Office of Regulations and Rulings found the estimated fees reasonable, in view of the time-consuming nature of certain requests. *Id.* at 34. He also rejected the allegations that disclosure would be in the public interest, because he failed to find a genuine public interest in the subject matter or the specific records. *Id.* The director said, "It is more likely that the preponderant purpose of the requests is to obtain information thought to be useful in furthering the unique and limited interests of the requesters. Any benefit which the general public might derive from the disclosure of the records and the waiver of fees would be, at best, indirect and speculative." *Id.* at 34–35. Accordingly, the director denied the request for a fee waiver. *Id.* at 35. He found no basis for the charge of bad faith in the assessment of fees. *Id.*

The union filed suit to compel the Customs Service to waive or significantly reduce all fees for its requests. In response to cross-motions for summary judgment, the District Court said, "We are satisfied that defendants did not act arbitrarily or capriciously or abuse their discretion in refusing to waive charges for search and duplication costs in connection with plaintiff's six requests for information. We hold that the waiver of costs would not be in the public interest because the information requested cannot be considered as 'primarily benefitting the general public.'" *National Treasury Employees Union v. Griffin,* No. 84–3291 (D.D.C. filed July 22, 1985), J.A. at 74. The court then granted the Service's motion.

## II. The Standard for FOIA Fee Waivers

Although FOIA generally requires requesters to pay the costs of searches, it also provides that

fees shall be limited to reasonable standard charges for document search and duplication and provide for recovery of only the direct costs of such search and duplication. Documents shall be furnished without charge or at a reduced charge where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the in-

formation can be considered as primarily benefiting the general public.

5 U.S.C. § 552(a)(4)(A) (1982).[2]

■ Fee waivers or reductions are mandatory under § 552(a)(4)(A) only if the agency makes the requisite public interest finding. An agency's finding that a fee waiver does not satisfy the public interest standard will be upheld unless the finding is arbitrary or capricious. *See Ely v. United States Postal Service,* 753 F.2d 163, 165 (D.C.Cir.), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2338, 85 L.Ed.2d 854 (1985); *Allen v. FBI,* 551 F.Supp. 694, 696–97 (D.D.C.1982); *Eudey v. CIA,* 478 F.Supp. 1175, 1176 (D.D. C.1979). *But see Rizzo v. Tyler,* 438 F.Supp. 895, 899 (S.D.N.Y.1977) (agency finding reviewed de novo).

### A. *NTEU's Public Interest Showing*

NTEU's original requests gave no indication of how the information requested could be "considered as primarily benefiting the general public." Its administrative appeal letter repeatedly stated that a fee waiver was "clearly appropriate," but (except for the repetitions) made almost no effort to demonstrate the proposition.

■ A requester seeking a fee waiver bears the initial burden of identifying the public interest to be served. *See Ely v. United States Postal Service,* 753 F.2d at 165; *Ettlinger v. FBI,* 596 F.Supp. 867, 874–76 (D.Mass.1984); *Lykins v. Rose,* 3 Gov't Disclosure Serv. (P.H) ¶ 82,486, at 83,222 (D.D.C. Oct. 4, 1982); *Burriss v. CIA,* 524 F.Supp. 448, 449 (M.D.Tenn.1981). When a public interest is asserted but not identified with reasonable specificity, and circumstances do not clarify the point of the requests, it is not arbitrary or capricious for an agency to infer, as the Customs Service did here, that any benefit to the public from disclosure and waiver "would be, at best, indirect and speculative." J.A. at 35. *Cf. American Federation of Government Employees, Local 2782 v. Department of Commerce,* 632

F.Supp. 1272, 1278 (D.D.C.1986) ("Society undoubtedly has an interest in discovering and subjecting unlawful agency action to public scrutiny, but the Union's allegations of malfeasance here are too ephemeral at the moment to warrant such a [FOIA] search at public expense without further reason to suppose that the corruption suspected will be found."). With only conclusory allegations of the point of the requests before it, the Service naturally found it difficult to discern a basis for the NTEU's assertions of a public interest. Any benefit to the general public that might flow from furnishing the requested information is less than obvious.

In opposing the Service's motion for summary judgment, NTEU purported to explain the public interest it intended to invoke. It said that the awards and bonuses information related to possibly improper personnel practices. Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment at 18. The travel vouchers request related to its claims that Service labor negotiators had engaged in an obstructionist labor relations policy and spent tax dollars unnecessarily, *id.* at 21–22, and the complaint letters request related to a quota system under which Service employees were awarded points for discovering undeclared merchandise, *id.* at 27–28. NTEU devotes the greater part of its brief on appeal to further explanation of the public interest in these issues.

■ The public interests identified here would hardly justify fee waivers for all the information requested. Accepting *arguendo* that the quota system, for example, is indeed the subject of considerable public concern, such concern would not justify waiver of fees for search and duplication of *all* complaint letters (rather than just quota system complaints). The relationship between the other requests and the public interests identified are similarly

---

2. Since the time that this case was argued, Congress amended this language as part of the Anti-Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1803, 100 Stat. 3207, 3207–49 to 3207–50. The prospective effective date of the amendment, *see id.* § 1804, 100 Stat. at 3207–50 allows us to confine our analysis to the 1982 version of the provision.

tangential. Furthermore, the links between furnishing the requested information and benefiting the general public seem at best tenuous.

A detailed examination of these issues is inappropriate, however. The union's efforts to fashion a plausible public benefit theory come too late. The reasonableness of the agency's refusal depends on the information before it at the time of its decision. *See Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (agency rule would normally be arbitrary and capricious if explanation for it "runs counter to the evidence before the agency"). The union's failure to demonstrate a public interest before the agency cannot be remedied by doing so before a court. *Cf. Dettman v. Department of Justice,* 802 F.2d 1472, 1476–77 (D.C.Cir.1986) (exhaustion of remedies is an ordinary requirement of FOIA cases). This is not to say that courts should ignore otherwise admissible evidence of a public interest that was not submitted to the agency, however, since such evidence may apprise the court of a controversy already known to the agency.

NTEU argues that the agency was well aware of the high degree of public interest in the requested information, since the issues involved were matters of common knowledge. Brief for Appellant at 30–32. After reexamining the requests in light of the affidavits and other papers submitted to the District Court in support of NTEU's cross-motion for summary judgment, we find it impossible to conclude that the agency should have understood the point of NTEU's requests without further elaboration. Thus these submissions provide no excuse for the union's failure in its original waiver requests to give an adequate account of how furnishing the information it sought would benefit the general public.

### B. *Discovering the Primary Beneficiary*

■ Even if we could accept NTEU's assertions concerning the degree of public

interest in this subject matter, we would still find its fee waiver request inadequate. Such requests must not only show a connection between the material sought and a matter of genuine public concern, but must also indicate that a fee waiver or reduction will *primarily* benefit the public. *See Crooker v. Department of the Army,* 577 F.Supp. 1220, 1223 (D.D.C.1984); *Burriss v. CIA,* 524 F.Supp. at 449. When furnishing requested information is likely to provide both public and private benefits, the agency must determine which benefit is primary.

The union admits that it expects to benefit from the information requested. *See* NTEU's Memorandum of Points and Authorities at 20 ("NTEU expects to benefit from the information, to be sure, but it is a benefit of improved labor relations and working conditions."). In its requests, however, it never gave a clear account of the anticipated private benefits. Thus it is not surprising that the agency found it likely "that the preponderant purpose of the requests is to obtain information thought to be useful in furthering the unique and limited interests of the requesters." J.A. at 34.

Equally unpersuasive is the union's suggestion that its size insures that any benefit to it amounts to a public benefit. *See* Brief for Appellant at 35–36 (claiming a membership of 110,000). The union is mistaken in supposing that *Disabled Officer's Association v. Rumsfeld,* 428 F.Supp. 454 (D.D.C.1977), supports this vainglorious view. *Disabled Officer's Association* concerned a veterans' group's efforts to gain access under FOIA to names and addresses of potential members. To determine whether this information was exempt from disclosure under 5 U.S.C. § 552(b)(6), the court sought to balance the privacy interests in nondisclosure and the public interests involved. One of the public interests identified in this process was the group's lobbying activities on behalf of disabled officers of the Armed Forces, identified as "a significant segment of the public." 428 F.Supp. at 458. In context, the approving

reference to the veterans' group's activities hardly suggests that large organizations ordinarily should receive fee waivers.

If NTEU proposed to use the requested information to get new legislation or build public support for improving the lives of its members, we would have no difficulty characterizing such aims as primarily private. *Cf.* NTEU's Memorandum of Points and Authorities at 18 (expressing intention "to draw public attention to these improper personnel practices"). We see no reason to assume that the union's public relations efforts primarily benefit the public, in the absence of a straightforward description from the union of its aims.

The union's reliance on *Badhwar v. Department of the Air Force*, 615 F.Supp. 698 (D.D.C.1985), is misplaced. One requester in *Badhwar* identified himself as a reporter on the staff of Jack Anderson investigating military safety practices with a view to writing about them. *Id.* at 708. The district court found that in view of these disclosures the Air Force knew or should have known the identity of the requesters and their aims. *Id.* Since there was no basis for the Air Force's conclusion that the requests were primarily to serve private rather than public interests, the refusal to waive fees was arbitrary and capricious. *Id.* The union suggests that the Customs Service's long familiarity with the union requires a similar result here.

We do not think the union is in a position analogous to the reporters on Jack Anderson's staff. The legislative history of the fee waiver provision indicates special solicitude for journalists, along with scholars and public interest groups. *See* S.Rep. No. 854, 93d Cong., 2d Sess. 3, 11 (1974); *Ettlinger v. FBI*, 596 F.Supp. at 872; Bonine, *Public-Interest Fee Waivers Under the Freedom of Information Act*, 1981 Duke L.J. 213, 238–44. The preference seems natural. While private interests clearly drive journalists (and journals) in their search for news, they advance those interests almost exclusively by dissemination of news, so that the public benefit from news distribution necessarily rises with any private benefit. Thus it is reasonable to presume that furnishing journalists with information will primarily benefit the general public; any other view would entail a more or less unresolvable inquiry into the value of journalists' private goals. A union, however, may put information to such varied uses, many of which are wholly independent of informing the public, that the relation between public and private benefits is by no means constant. Accordingly, when there is a clear understanding of the requester's purposes, comparison of the private and public benefits is no more than a garden-variety "weighing" inquiry and is equally susceptible of resolution. Thus, to secure a finding of predominate public benefit, a requesting union must typically submit more detail than a journalist.

In the context of *Badhwar*, the reporter's explanation of his purposes made the relation between private and public benefits clear enough to indicate the tilt in favor of the public benefit. The same cannot be said of the union's request, given the identity of the requester and obscurity of its explanations.

## C. *The Agency's Explanation*

 The union relies on *Eudey v. CIA*, 478 F.Supp. at 1177, for the proposition that an agency's refusal to waive fees is arbitrary and capricious when the agency's explanation contains no indication that furnishing the requested information will not primarily benefit the general public. We agree that an agency must explain its refusal to waive fees. However, when, as here, a public interest is not specifically presented and the requester's own purposes are unexplained, an agency need not consider hypothetical interests and purposes. The Service's explanation noted proper factors for consideration and drew a reasonable inference that NTEU's unexplained purposes were greater than the unexplained public interest.[3] In the cir-

---

**3.** In deciding NTEU's appeal, the Service said, "[The statutory public interest standard] means that the information released must meaningfully contribute to the public understanding of the

cumstances, the agency's failure to give a fuller explanation was not arbitrary or capricious.

### III. Amount of Fees

Besides contending that the obviousness of the public benefit implicit in its request made a fee waiver mandatory, NTEU raises but does not press an argument that the fees requested were improperly inflated with a view to effectively denying access.[4] Brief for Appellant at 8, 11. Such a practice would, of course, be highly improper. Indeed, the 1974 amendments to FOIA adding the language on fee waivers and reasonable standard charges were clearly aimed at preventing agencies from using high fees to discourage requests. *See* S.Rep. No. 854, 93d Cong., 2d Sess. 11–12 (1974).

■ The fees requested by the agency for the three searches at issue total almost $8,000, lending a surface plausibility to NTEU's claim. The Service explained, however, both in its original letters to the union and in a litigation affidavit, that the fees were based on estimates of the hours that would be required for each search. *See* J.A. at 16, 18, 22, 34, 53–56. The fees were in accordance with Treasury Department regulations, which provide for search charges of $10 per hour and $.15 per page of photocopying.[5] 31 C.F.R. § 1.6(g)

(1986). Furthermore, the Service explained that the most expensive request—$6,530 for the complaint letters—would require several independent searches because the records sought were not centrally filed. J.A. at 18, 34, 54–55. Thus the Service rebutted any possible inference from the mere size of the fees that they were improper. Moreover, the Service's invitation to NTEU to reformulate its request to reduce the cost (to which the union apparently made no response) suggests agency cooperation, rather than obstruction. *See id.* at 18, 34.

NTEU failed to offer any affidavits or other evidence in support of its allegations of impropriety in setting the fees. Rule 56(e) of the Federal Rules of Civil Procedure requires a party opposing a properly supported motion for summary judgment to do more than "rest upon the mere allegations or denials of his pleading"; it must "set forth specific facts showing that there is a genuine issue for trial." NTEU's bare allegations of impropriety do not meet that standard in the face of the Service's properly supported motion. *Cf. Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.1981) (summary judgment warranted if agency affidavits adequately explaining rejection of FOIA request "are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith.").

---

subject matter deemed to be in the public interest. Additional factors considered in a determination to grant or deny a fee waiver are the purposes for which the requested material is intended and the ability and intention of the requester to disseminate the information to the public." J.A. at 34.

Both parties agree that the agency should have considered five factors drawn from a January 1983 Department of Justice guidance memorandum in determining whether a waiver was in the public interest, although they do not agree on whether the factors were properly applied. We note that this Court recently remanded another case for consideration of whether these factors are consistent with FOIA. *Better Government Association v. Department of State*, 780 F.2d 86 (D.C.Cir.1986). We find it unnecessary to this case and therefore inappropriate to determine precisely what factors must be considered in every fee waiver determination. We hold only that the factors enumerated by the

Service were proper in response to NTEU's appeal.

4. Brief for Appellees at 7 n. 3 suggests that NTEU did not raise this matter before the District Court and therefore may not raise it on this appeal. However, appellant's complaint explicitly refers to the fees as excessive, *see* J.A. at 10, and it raised the matter again with reasonable clarity in its Memorandum of Points and Authorities at 10. In view of this, we see no merit in appellee's argument.

5. The Service requested prepayment of fees as follows: $700 for the awards and bonuses request, based on an estimated search time of 70 hours; $6,530 for the complaint letters request, based on estimated search time of 652½ hours; and $745.45 for the travel vouchers request, based on an estimated search time of 70 hours and 303 pages of photocopying.

Accordingly, the judgment of the District Court is

*Affirmed.*