**David Paul LARSON, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

**Civ. A. No. 86–364 SSH.**

United States District Court, District of Columbia.

July 28, 1987.

---

David Paul Larson, pro se.

Mark E. Nagle, Asst. U.S. Atty., U.S. Atty's Office, Washington, D.C., for defendant.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendant's motion for summary judgment. On consideration of the parties' submissions and the entire record, the Court concludes that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment is granted.

### Background

On November 17, 1985, plaintiff David Paul Larson, then incarcerated at the United States Penitentiary in Terre Haute, Indiana, wrote to the Central Intelligence Agency (CIA) requesting a copy of all files on Vitaliy Yurchenko, a Soviet KGB agent who defected to the United States and then "redefected" to the Soviet Union shortly thereafter. In this initial correspondence, Larson agreed to pay all fees for copying of such files. The CIA responded on December 2, 1985, by forwarding to Larson a three-page biography of Yurchenko, along with a fee schedule for search fees. In the CIA's accompanying letter, the agency informed Larson that it must receive his commitment to pay search fees prior to processing his request.

By letter dated December 23, 1985, Larson requested a waiver of fees "due to the wide spread [sic] publicity of Yurchenko and his supposed re-defection back to the Soviet Union." Larson further stated that Yurchenko's allegations of abuse in the hands of the CIA were "not only important to me; but has [sic] instigated an investigation by the U.S. Senate into the handling of Yurchenko by the CIA." On January 15, 1986, Lee Strickland, Information and Privacy Coordinator for the CIA, informed Larson by letter that he was denying the fee waiver request because he had concluded that the information Larson sought

"would not primarily result in substantive benefit to the public."

On January 27, 1986, Larson filed suit in this Court, claiming a right to access to the requested information and stating his intent to send copies of all released documents to "a Major Newspaper Co. so the Public will have access to said information." By letter dated February 6, 1986, Strickland wrote to Larson confirming receipt of the complaint. Strickland stated that the CIA was interpreting Larson's complaint as an administrative appeal to the denial of the fee waiver request, and was forwarding the complaint to the Executive Secretary of the CIA Information Review Committee.

Following the filing of the CIA's answer on April 10, 1986, Benedetto DeFelice, acting Executive Secretary of the Information Review Committee, wrote to Larson on May 14, 1986, advising him of the CIA's final denial of his fee waiver request.

In plaintiff's "opposition to defendant's answer," filed July 21, 1986, Larson asserted that he had "access to a major newspaper who is interested in the released material to be published" and attached a letter from *Washington Post* Executive Editor Benjamin C. Bradlee. The letter was dated July 9, 1986, and stated only: "I certainly would be interested in anything you get from the CIA on Vitaly [*sic*] Yurchenko."

## Discussion

The Freedom of Information Act, 5 U.S.C. § 552, governs public access to the records of government agencies. The Act provided, at the time the CIA considered Larson's fee waiver request, that documents were to be furnished without charge or at a reduced charge "where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can be considered as primarily benefiting the general public." 5 U.S.C. § 552(a)(4)(A); *see also* 32 C.F.R. § 1900.25(a) (CIA regulations governing fees for records services).

When an agency is determining whether a fee waiver would be "in the public interest," the identity of the requester, his purpose for seeking the information, and the character of the information itself are proper factors for the agency to consider. *Eudey v. Central Intelligence Agency*, 478 F.Supp. 1175, 1177 (D.D.C.1979). Accordingly, the CIA fee waiver regulations identify six factors to be considered by the agency: (1) the public or private character of the information sought; (2) the private interest of the requester; (3) the numbers of the public to be benefited; (4) the significance of the benefit to the public; (5) the usefulness of the information to the public; and (6) the quantity of similar or duplicative information already in the public domain. *See* 32 C.F.R. § 1900.25(a).[1] When read in the context of the statutory language and case law, the agency's six factors reduce to a three-prong inquiry: (1) What is the private interest of the requester? (2) What is the character of the information sought? (3) How substantial is the public benefit to be derived from this particular request?[2]

**1.** The Freedom of Information Act was amended in 1986 to include factors similar to those enumerated in the CIA regulations. The pertinent section provides that "[d]ocuments shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *See* 5 U.S.C. § 552(a)(4)(A)(iii).

Similar factors are also included in the Department of Justice Guidelines, promulgated by the Office of Legal Policy on January 7, 1983, to give agencies guidance regarding fee waiver provisions of the FOIA. The Guidelines' suggested queries are: (1) Is there a genuine public interest? (2) Is there value to the public from disclosure? (3) Is the information already available in the public domain? (4) What is the identity of the FOIA requester? (5) Does the requester expect to gain commercial or personal benefit from disclosure?

The record in this case indicates that the CIA considered both the CIA regulations and the Department of Justice Guidelines in making its determination.

**2.** This inquiry includes numbers of the public to be benefited, significance of the benefit to the public, usefulness of the information to the public, and the extent to which the information is already in the public domain.

■ The first prong of the inquiry focuses on the private interest of the requester. If the requester plans to use the information primarily for his personal gain, a fee waiver or reduction is inappropriate. *See, e.g., Crooker v. Department of the Army,* 577 F.Supp. 1220 (D.D.C.1984) (fee waiver request by plaintiff who intended to write a book about his brother was properly denied because there had been no showing that the search requested would benefit anyone but the plaintiff and his brother). In the present case, however, Larson has identified the widespread publicity of the Yurchenko affair and seeks the information as a member of the public, not as one seeking to uniquely benefit only himself.

■ The second inquiry addresses the character of the information sought. If the information sought is personal to the requester, and does not pertain to issues of public interest, then a fee waiver or reduction should not be granted. *See, e.g., Ely v. United States Postal Serv.,* 753 F.2d 163 (D.C.Cir.), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2338, 85 L.Ed.2d 854 (1985) (denial of fee waiver request was proper when plaintiff, a prisoner incarcerated in a federal correctional institution, requested copies of all files and documents concerning himself). In this case, the Yurchenko matter, involving issues of national security, is undeniably of public interest.

However, while this Court has made general public interest in the subject matter underlying a fee waiver request a necessary condition, it has never focused on this factor in isolation. The Court also must consider the ability of the requester to disseminate the information to the interested general public. *See, e.g., Allen v. Federal Bureau of Investigation,* 551 F.Supp. 694 (D.D.C.1982) (scholarly researcher requested information on Kennedy assassination);

**3.** When reviewing an agency's denial of a fee waiver request, the Court may consider only the information that was before the agency at the time of its decision. *National Treasury Employees Union,* 811 F.2d at 648. At the time the CIA issued its final denial of Larson's fee waiver request, Larson had relied only on the widespread publicity of the Yurchenko matter and his intent to send copies of all released documents to newspapers.

*Badhwar v. United States Dep't of the Air Force,* 615 F.Supp. 698 (D.D.C.1985) (investigative reporter requested information on military air accident). In *Allen,* this Court noted that, because President Kennedy's assassination was clearly a matter of public interest and because plaintiff has "presented sufficient information for the FBI to conclude that release to him would benefit the public at large rather than just the plaintiff himself," 551 F.Supp. at 697, the FBI's denial of the fee waiver was arbitrary and capricious. Similarly, in *Badhwar,* this Court reversed the Air Force's denial of a fee waiver because it found that public interest in military aviation safety was apparent, and that there was no basis to conclude that the journalists' requests were primarily to serve their private interests. Accordingly, the Court must proceed beyond a finding of general public interest to the third inquiry to determine the extent to which this particular disclosure is likely to benefit the public.

■ In this case, a consideration of the public benefit to arise from granting the fee waiver request is dispositive. A requester seeking a fee waiver bears the initial burden of identifying the public interest to be served. *National Treasury Employees Union v. Griffin,* 811 F.2d 644, 647 (D.C.Cir.1987). However, the record contains little evidence of a showing by Larson of the public interest which will be served if his request is granted. In Larson's letter of December 23, 1985, requesting a fee waiver, he failed to present any evidence regarding his ability to disseminate the information to the public but instead gave as the sole reason for granting his request "the wide spread [*sic*] publicity of Yurchenko and his supposed re-defection back to the Soviet Union." [3]

Much later, Larson submitted a letter from the Executive Editor of *The Washington Post* indicating interest in "anything you get from the CIA on Vitaly [*sic*] Yurchenko." This letter was not part of the administrative record in this case and, consequently, is not germane to the Court's review of the CIA's action. However, even if the Court were to consider this letter, it would not accept such a noncommital expression of interest as evidence of Larson's ability to dis-

In the CIA's final denial letter to Larson, the agency properly considered Larson's inability to make any disclosed information available to the public. Noting that Larson was then incarcerated, had no apparent connection with the news media, and had no apparent access to facilities or personnel that might enable him to disseminate the information, the CIA concluded that Larson was in no position effectively to circulate the information.

### Conclusion

 An agency has broad discretion in determining whether to waive fees. *Eudey,* 478 F.Supp. at 1176. As a final agency action, a denial of a fee waiver will be reversed only if found arbitrary or capricious. *See National Treasury Employees Union,* 811 F.2d at 647; *Eudey,* 478 F.Supp. at 1175. *Cf.* 5 U.S.C. § 706 (provision of the Administrative Procedure Act setting forth the arbitrary and capricious standard). An agency's decision not to waive fees will be rational, and therefore not arbitrary or capricious, if it is based upon some factor shedding light on the central issue of whether furnishing the information will primarily benefit the public at large or whether any benefit will inure primarily to the specific individual requesting the documents. *Eudey,* 478 F.Supp. at 1177. Here, the CIA considered the identity and purpose of the requester in seeking the information and the character of the information itself, proper factors under *Eudey* and the relevant CIA regulations, and found that Larson had not presented sufficient evidence regarding his ability to disseminate any released information to the public.[4] The CIA's finding that a waiver of

fees in this case would not primarily benefit the public was reasonable, not arbitrary and capricious.[5]

Thus, because there is no genuine issue of material fact and because defendant is entitled to judgment as a matter of law, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), defendant's motion for summary judgment is granted.

---

seminate the released information to the public. Because all newspapers presumably will be "interested" in information relating to issues of public interest, such a rule would enable requesters to avoid fees simply by asserting an intention to give the released documents to a newspaper.

4. This Court in *Eudey* held that the CIA's decision not to waive fees was arbitrary when it was based on the fact that only a few documents would be released in response to plaintiff's request, an improper factor to consider. It appears from the language of the agency's final denial letter that in evaluating Larson's fee

waiver request the CIA considered what information would be disclosed in response to Larson's document request. However, whether or not the CIA's consideration of that factor in the context of this case was proper is irrelevant, because Larson's inability to disseminate the information to the public was a sufficient reason for denying his fee waiver request.

5. The CIA has denied only Larson's request for a fee waiver at this point, not his access to any particular information. Accordingly, plaintiff's claim that the CIA has unlawfully withheld information from him is premature.