# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 6, 2016          Decided February 14, 2017

No. 15-5117

NATIONAL SECURITY COUNSELORS AND JEFFREY STEIN,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00556)

*Kelly B. McClanahan* argued the cause and filed the briefs for appellants.

*Brian P. Hudak*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: BROWN, SRINIVASAN, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

2

SRINIVASAN, *Circuit Judge*: The Freedom of Information Act generally provides for persons to request the disclosure of records retained by administrative agencies. FOIA also addresses the charging of fees by agencies to process the release of records.

This case involves challenges raised by two separate FOIA requesters to the fees assessed against them by the Department of Justice for processing their requests for records. One requester argues that the fees assessed against him exceed the amounts permitted by the statute. The other contends that its request falls within a statutory waiver of fees for certain disclosures furthering the public's understanding of government operations. The district court denied both claims and awarded summary judgment to the Department. We affirm the district court's rejection of the second requester's argument for a statutory waiver of fees, but we vacate and remand for further proceedings with regard to the first requester's challenge to the amount of fees assessed against him.

I.

The first fee dispute involved in this case concerns a September 13, 2011, FOIA request submitted to the Federal Bureau of Investigation by appellant Jeffrey Stein. Stein is a columnist and blogger who writes about national security issues. He sought disclosure of "all pages on the internal Federal Bureau of Investigation ('FBI') Records Management Division ('RMD') website, . . . as well as all documents, images, audio and video files, and any other files posted on the RMD website." FOIA Request from Jeff Stein to David M. Hardy, Chief, FBI Record/Info. Dissemination Section (Sept. 13, 2011). The FBI, a component of the Department of Justice, responded to Stein's request by releasing, free of

charge, a CD containing an initial 567 pages of responsive material. The agency further conveyed that it had located an additional 21,753 responsive pages, which the agency would produce for Stein on multiple CDs if he paid a fee of $665. The FBI calculated that fee pursuant to its interim release policy, under which it responds to large document requests by burning a series of CDs, each of which contains a maximum of 500 pages of responsive documents. The agency charges requesters $15 per CD.

Stein did not pursue any administrative appeal of that initial fee determination within the agency. Instead, he brought an action in district court, claiming that the FBI's fee policies, at least as they apply to large requests like his own, are inconsistent with FOIA.

The second fee dispute involved in this case arises out of two September 19, 2011, FOIA requests submitted to the Department of Justice by appellant National Security Counselors (NSC), a non-profit law firm. One of NSC's requests asked for documents concerning all FOIA cases handled by the Federal Programs Branch of the Department of Justice from 2000 to the present. The other request sought "all sworn declarations made by agency representatives as part of certain FOIA or Privacy Act litigation between 2002-2006, inclusive." FOIA Request from NSC to James M. Kovakas, FOIA/Privacy Act Officer, Dep't of Justice Civil Div. (Sept. 19, 2011). In conjunction with both requests, NSC asked for a waiver of charges under a FOIA provision mandating waiver or reduction of fees for certain disclosures deemed to be in the public interest. 5 U.S.C. § 552(a)(4)(A)(iii). The agency denied NSC's requests for a public-interest fee waiver.

Stein and NSC brought an action under FOIA against the Department of Justice, contesting the fees assessed against them by the agency. The district court granted summary judgment in favor of the Department. Stein and NSC then brought this appeal.

## II.

We first consider Stein's challenge to the fees assessed by the FBI under its interim release policy for production of multiple CDs containing responsive documents. We review the district court's grant of summary judgment de novo. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 813 F.3d 380, 383 (D.C. Cir. 2016). We vacate the grant of summary judgment against Stein and remand for further proceedings.

## A.

As a threshold matter, the agency contends that Stein's failure to exhaust administrative remedies precludes judicial review of his challenge to the interim release policy. We are unpersuaded. Because a FOIA requester's failure to exhaust administrative remedies "is not [a] jurisdictional" bar to review, it is within our discretion to entertain Stein's arguments. *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). Although "FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review," *id.* at 1259, we conclude that, in the specific circumstances of this case, the purposes of the exhaustion doctrine would not be served by declining to hear Stein's claim.

Stein filed this suit along with two other plaintiffs, NSC and an organization called Truthout (which did not join this appeal). While NSC asserted multiple claims, Stein and Truthout raised only one, in which they (together with NSC)

contested the FBI's fees under its interim release policy. Stein did not pursue any administrative appeal of the agency's assessment of fees under that policy, but both NSC and Truthout exhausted their administrative remedies.

We have previously elected to consider the claim of a party who failed to exhaust agency remedies when that party's claim and the claim of someone who did personally exhaust "are so similar that it can fairly be said that no conciliatory purpose would be served" by requiring exhaustion from both parties. *Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C. Cir. 1981); *see also Cellnet Commc'n, Inc. v. FCC*, 965 F.2d 1106, 1109 (D.C. Cir. 1992). Here, when two co-plaintiffs jointly asserting precisely the same claim in the same action did exhaust, we elect to consider Stein's challenge notwithstanding his own failure to exhaust.

To be sure, neither of the co-plaintiffs presently stands alongside Stein in challenging the agency's fees for producing multiple CDs under the FBI's interim release policy: Truthout is not a party to the appeal at all, and NSC, while appealing on other grounds (*see* Part III, *infra*), retains no further stake as to this particular challenge because the FBI has disclosed, free of charge, the documents NSC requested in connection with the claim. Still, the fact remains that both Truthout and NSC exhausted administrative remedies with regard to the same claim brought jointly with Stein's in the same case. In the circumstances, denying review of Stein's companion claim on grounds of his own non-exhaustion would not serve the purposes of requiring administrative exhaustion—i.e., enabling the agency to "function efficiently" and to "have an opportunity to correct its own errors," "afford[ing] the parties and the courts the benefit of its experience and expertise," and "compil[ing] a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S.

749, 765 (1975). We therefore proceed to the merits of Stein's challenge.

## B.

The agency submitted a declaration by David Hardy, the Chief of the Record/Information Dissemination Section at the FBI, in which it explained the basis for the $665 fee assessment against Stein. Hardy Decl. ¶ 26 (Sept. 17, 2013). Under the FBI's interim release policy for large document requests, the FBI includes up to 500 pages of responsive documents on a single CD. Due to the confidential nature of many of its records, the FBI, before burning each CD, runs what it refers to as the "Integrity" protocol, a computer program that scans for "exempt words, names, confidential sources, or classified techniques" in responsive documents. *Id.* ¶ 33(c). For each 500-page CD, the Integrity protocol takes approximately 50 minutes to complete. The Hardy Declaration thus explains that, based on the applicable government pay scale for 50 minutes of operator labor, the "average operator cost for the Integrity process alone is $39.50." *Id.* ¶ 33(d) n.18. The FBI releases completed CDs to requesters for $15 apiece, a rate significantly less than the FBI's asserted labor costs for producing each CD. Because the FBI identified 21,753 pages of responsive material in addition to the initial 567-page CD of disclosures, the FBI offered to produce the remaining material on forty-four additional CDs, each containing up to 500 pages, for a total charge of $660. The final charge of $665 assessed against Stein includes a $5 fee for the initial 567-page CD, which the FBI collects only if a requester elects to pay for additional disclosures.

FOIA imposes two salient limitations on the fees an agency can charge requesters. First, fees must "be limited to

reasonable standard charges." 5 U.S.C. § 552(a)(4)(A)(ii). Second, an agency may recover "only the direct costs of search, duplication, or review." *Id.* § 552(a)(4)(A)(iv). Stein asserts that the $665 fee assessed against him under the interim release policy fails both requirements.

Stein first contends that the policy, by limiting the number of pages included on each CD to 500, produces fees exceeding "reasonable standard charges." There is no dispute that each CD can hold far more than 500 pages of material. Stein demonstrated that the pages responsive to his request likely could have fit onto one CD rather than the forty-four CDs on which the agency proposed to disclose the documents. If the charges assessed under the interim release policy for producing forty-four CDs (rather than one) amounted to an improper inflation of fees "with a view to effectively denying access," the policy would infringe FOIA. *Nat'l Treasury Emp's Union v. Griffin*, 811 F.2d 644, 650 (D.C. Cir. 1987).

That is not the case here. The FBI regularly receives FOIA requests encompassing a massive number of responsive documents. Due to the time it takes the agency to run the Integrity protocol, the processing of a large request, if not divided into segments, could substantially delay disclosure to other requesters who seek a smaller number of documents. As explained in the Hardy Declaration, the interim release policy thus aims to enable the FBI "to develop multi-track processing with the goal of responding to more requests." Hardy Decl. ¶ 33(a). By processing requests in 500-page increments, the policy ultimately "provides more pages to more requesters," avoiding situations in which "a few, large queue requests monopolize finite processing resources." *Id.* Far from giving rise to an improper inflation of fees that effectively denies access to requesters, the FBI's interim

release policy serves to promote efficient responses to a larger number of requesters.

Because the agency has come forward with a reasonable, non-obstructionist explanation for the interim release policy's 500-page-per-CD limitation, that limitation does not result in a violation of FOIA's mandate that agencies recover only "reasonable standard charges." That is true even though the policy may, to some degree, increase the cost of disclosure for large requests. FOIA's reasonable-charge mandate, as Stein concedes, does not require an agency to adopt the lowest-cost method of responding to requests. Nor, relatedly, does that statutory mandate require the FBI to waive its interim release policy on request in individual cases. FOIA does not stand in the way of an agency's formulation and application of a reasonable, generally applicable release protocol. Because the FBI's justifications for its interim release policy relate to the efficient processing of requests, it can permissibly adhere to the standard 500-page limit in the face of a case-specific waiver request even if, as Stein observes, it occasionally exercises its discretion to release CDs containing more than 500 pages (as with the initial 567-page CD released to Stein).

Stein alternatively contends that the fees assessed under the interim release policy exceed the agency's "direct costs of search, duplication, or review." 5 U.S.C. § 552(a)(4)(A)(iv). His argument begins with the proposition that the FBI's estimation of its direct labor costs at $39.50 per CD rests on an assumption that running the Integrity program requires 50 minutes of employee labor. Stein questions that assumption, arguing that it is unclear how much of the 50-minute time period needed to run the Integrity protocol in fact requires the actual involvement of an FBI operator. For instance, Stein submits, the agency's description of the Integrity program is consistent with a scenario in which an operator initially

activates the software but then sits idly by while the program processes documents with little or no ongoing employee engagement. If that were so, the FBI's labor costs associated with the Integrity program might fall well below the $15-per-CD charge under the interim release policy. Because the FBI's account of its direct production expenses rests on the labor costs ostensibly associated with running the Integrity program, Stein argues that there remains a genuine issue, precluding the entry of summary judgment against him, concerning whether the agency's fees exceed its direct costs.

We agree with Stein that the Hardy Declaration's explanation of the Integrity program lacks adequate specificity to determine whether, and to what extent, the 50-minute period for running the program involves employee engagement rather than idle time. Of course, FOIA does not require an agency to document its labor or other production costs with the exactitude of minute-by-minute detail. But here, after the agency initially submitted its explanation of labor costs in the Hardy Declaration, which were grounded in its assertion that the Integrity program generally takes 50 minutes to run, Stein raised questions about whether that period involves any meaningful employee engagement. The FBI, despite its awareness of Stein's argument, gave no supplemental information addressing whether the operation of the Integrity program in fact entails any ongoing employee interaction. Given those circumstances, we conclude that there remained a genuine issue, foreclosing the entry of summary judgment, concerning whether the fees assessed by the agency exceeded its direct costs.

The agency notes that Stein's (and his co-plaintiffs') briefing in the district court at one point stated that it "is true" that "running Integrity on a single CD costs more than $15." We do not read that statement to constitute a binding and

irrevocable concession that the direct costs of producing a single CD exceed the FBI's per-CD charge of $15. Rather, we understand the statement, considered in context, to come into play only if one assumes that the Integrity process involves no idle time on the part of the operator. Otherwise, Stein's argument to the effect that the Integrity process might involve employee idle time—which Stein repeatedly urged in the district court (including on the next page of the same brief), and which necessarily calls into question whether the direct costs of producing a CD exceed the per-CD charge of $15—would have been an entirely self-defeating one. Consequently, there remains a genuine issue of material fact concerning whether the direct costs of producing a CD exceed $15.

In so ruling, we in no way mean to call into question the possibility that the agency will adequately demonstrate on remand that the FBI's labor (or other direct) costs under the interim release policy in fact equal or exceed $15 per CD. Indeed, the agency might be able to do so in short order. We require only that the agency provide a sufficient factual basis upon which the district court can make the determination that the fees assessed under the interim release policy do not exceed direct costs.

### III.

We turn now to the second fee dispute at issue in this case, arising from NSC's requests for records concerning (i) post-2000 FOIA cases handled by the Department of Justice's Federal Programs Branch and (ii) sworn declarations made by Department representatives in connection with certain FOIA and Privacy Act litigation between 2002 and 2006. NSC claims entitlement to a waiver of fees for those requests pursuant to FOIA's provision establishing a waiver or

reduction of fees for certain disclosures in the public interest. 5 U.S.C. § 552(a)(4)(A)(iii).

A waiver or reduction of fees under that provision rests on satisfaction of two requirements. First, a requester must show that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." *Id*. Second, a requester must show that disclosure is not "primarily in [its] commercial interest." *Id.* Because the Department here concedes that NSC lacks any overriding commercial interest, the first requirement alone is in dispute. As to that requirement, the district court agreed with the Department that disclosure to NSC was unlikely to contribute significantly to public understanding of the government's operations or activities. Limiting ourselves "to the record before the agency," *id*. § 552(a)(4)(A)(vii), we review the denial of NSC's fee-waiver request de novo, and affirm.

While fee-waiver applications are to be "liberally construed" in favor of finding that requesters meet FOIA's two-prong test, requesters still must justify their entitlement to a waiver of fees in "reasonably specific" and "non-conclusory" terms. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003). Because NSC failed to provide adequate evidence suggesting that it would effectively disseminate its requested information in furtherance of the public's understanding of government operations, we find that NSC failed to carry its burden to demonstrate its entitlement to a waiver of fees.

As we have explained, although a fee-waiver applicant need not demonstrate its ability to reach a "wide audience," it must at least show that it can "disseminate the disclosed

records to a reasonably broad audience of persons interested in the subject." *Cause of Action v. FTC*, 799 F.3d 1108, 1116 (D.C. Cir. 2015) (quoting *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994)). Here, we agree with the Department that, based on the state of NSC's website at the time of its FOIA requests, it appeared to be "no more tha[n] . . . a clearing house for the records [it] receive[d]" through FOIA. Denial Letter from James M. Kovakas, FOIA/Privacy Act Officer, Dep't of Justice Civil Div., to Kel McClanahan, Exec. Dir., NSC (Oct. 17, 2011); *see Home Page*, Nat'l Sec. Counselors (Sept. 20, 2011), https://web.archive.org/web/20111104000523/http://nationals ecuritylaw.org. In addition, the Department correctly noted that NSC did "not appear [to be] actively engaged in gathering information to produce" original publications, as "[t]he 'NSC Publications' section of [its] website contains only three publications, two of which were written . . . prior to NSC's existence." Denial Letter on Administrative Appeal from Janice Galli McLeod, Assoc. Dir., Dep't of Justice Office of Info. Policy, to Kel McClanahan, Exec. Dir., NSC (May 22, 2012).

NSC, moreover, produced no information about the size of its audience or the amount of traffic received by its website. NSC's own stated plans about its intended use of the tens of thousands of pages of records encompassed by its request indicated only that it hoped to perform "unbiased analyses," "develop a predictive model," "or at least write a white paper." FOIA Requests from NSC to James M. Kovakas, FOIA/Privacy Act Officer, Dep't of Justice Civil Div. (Sept. 19, 2011). It further suggested that "the raw statistical data mined from these records . . . would prove valuable to any person attempting to model the respective agencies' FOIA implementation procedures, policies, patterns, and practices." *Id.* NSC neither identified a

discernible audience for the disclosures in their raw form nor demonstrated its possession of the requisite scientific or technical sophistication to analyze and convey the data in a more broadly digestible form.

We have previously upheld a denial of a fee-waiver request in circumstances in which a requester "failed to identify the newspaper company to which he intended to release the requested information, his purpose for seeking the requested material, or his professional or personal contacts with any major newspaper companies." *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988). Here, while NSC provided some barebones indication of how it intended to use its requested information, it similarly failed to provide sufficiently specific and non-conclusory statements demonstrating its ability to disseminate the disclosures to a "reasonably broad audience of persons interested in the subject." *Cause of Action*, 799 F.3d at 1116. That deficiency "alone is a sufficient basis for denying the fee waiver request." *Larson*, 843 F.2d at 1483. We therefore affirm the denial of NSC's request for a public-interest fee waiver.

\* \* \* \* \*

For the foregoing reasons, we vacate the district court's grant of summary judgment with respect to Stein's claim and remand for further proceedings consistent with our opinion. We affirm the district court's grant of summary judgment in favor of the Department in connection with NSC's request for a public-interest fee waiver.

*So ordered.*