## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                                        |     |                                  |
| -------------------------------------- | --- | -------------------------------- |
|                                        | )   |                                  |
| **MIDDLE EAST FORUM,**                 | )   |                                  |
|                                        | )   | **Case No. 17-cv-0767 (RCL/GMH)** |
| **Plaintiff,**                         | )   |                                  |
|                                        | )   |                                  |
| **v.**                                 | )   |                                  |
|                                        | )   |                                  |
| **U.S. DEPARTMENT OF HOMELAND**        | )   |                                  |
| **SECURITY,**                          | )   |                                  |
|                                        | )   |                                  |
| **Defendant.**                         | )   |                                  |
|                                        | )   |                                  |

## MEMORANDUM OPINION AND ORDER

In this case, Plaintiff Middle East Forum seeks information from Defendant United States Department of Homeland Security ("Defendant" or "DHS") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The case was filed in April 2017, and Defendant received several extensions of time to answer (with Plaintiff's consent) while it searched for documents responsive to Plaintiff's requests. [Dkts. 8, 10, 12]. Beginning in August 2017, however, Plaintiff began to oppose such extensions, noting that the parties had been unable to agree on a timeline for production of documents. [Dkt. 15, ¶ 3; Dkt. 17, ¶ 3]. On December 20, 2017, the Honorable Royce C. Lamberth, United States District Judge, granted, *nunc pro tunc*, Defendant's September 2017 motion seeking an extension of time to answer until October 30, 2017, granted Plaintiff's motion for a status conference, and referred the case to the undersigned to "set a scheduling order . . . and give the government an opportunity to cure its current default posture." [Dkt. 21].

On January 25, 2018, the status conference was held. Defendant represented that its searches had found over 27,000 potentially responsive documents, and proposed a schedule in

which it would review 500 documents per month to determine whether they were responsive or subject to exemptions for disclosure. Minute Order dated Jan. 25, 2018. Plaintiff objected and sought a schedule requiring Defendant to review at least 1,000 documents per month. *Id.* Plaintiff further agreed to meet with Defendant to attempt to narrow the range of potentially responsive documents. *Id.* The Court ordered a status update on the meet and confer process, written submissions on the proposed review schedule, extended the time for Defendant to respond, *nunc pro tunc*, to January 25, 2018, and with consent of Plaintiff, stayed Defendant's obligation to respond to the Complaint until "completion of its production of documents in this case, the production schedule for which will be set . . . after review of the [ordered] filings." *Id.*

On February 16, the parties reported that, pursuant to an agreement, the universe of potentially responsive documents had been narrowed to approximately 3,400, and Defendant anticipated that it would begin reviewing and processing those prioritized records beginning in March 2018. [Dkt. 25]. Defendant also submitted a declaration from James V.L.M. Holzer, the deputy chief FOIA Officer for the DHS Privacy Office ("DHS Privacy")—which is responsible for processing the requests at issue here—explaining the agency's staffing and workload.[1] According to Mr. Holzer, DHS Privacy has a FOIA staff of approximately 15 individuals (including management personnel), and was responsible for almost 3,000 FOIA requests between 2013 and 2016, approximately 1,200 of which were complex requests. [Dkt. 26-1, ¶¶ 9–11]. In 2017, DHS Privacy received approximately 1,350 FOIA requests (representing an 87% increase from the yearly average for the previous four years and a 125% increase from 2016 alone), 791 of

---

[1] In addition to processing the FOIA requests it receives itself, DHS Privacy processes FOIA requests directed to DHS' Office of the Secretary, Office of the Citizenship and Immigration Services Ombudsman, Office for Civil Rights and Civil Liberties, Office of the Executive Secretary, DHS Management Directorate, Countering Weapons of Mass Destruction Office, Office of the General Counsel, Office of Legislative Affairs, Office of Public Affairs, Office of Operations Coordination, and Office of Policy. [Dkt. 26-1, ¶ 7].

which were complex (representing a 164% increase from the yearly average for the previous four years). *Id.*, ¶ 11. There are currently 464 backlogged cases. *Id.* The office has also experienced a 65% increase in FOIA-related litigation since 2016. *Id.*, ¶ 13. Mr. Holzer asserts that the office

> is subject to court orders in three cases that collectively require [it] to process at least 2,500 pages per month, and anticipates that court orders may be issued in one or more other pending cases. In addition [the agency] has been processing approximately 3,000 additional pages per month for other cases that are in litigation but for which the court has not ordered [it] to process a minimum number of pages per month.

*Id.*, ¶ 13. Processing 1,000 pages per month on Plaintiff's requests would require DHS Privacy to reallocate resources from other FOIA requests, some of which were received prior to Plaintiff's, and to corral additional personnel. *Id.*, ¶¶ 17, 19–20. Even this might not substantially increase processing capacity given that such processing requires knowledge of the relevant law and DHS' organization and activities, and new staff would be inexpert. *Id.* Mr. Holzer is also concerned that processing documents at a 1,000-per-month clip would not allow "adequate time to conduct intra-agency and inter-agency reviews that [he] expect[s] will be necessary." *Id.*, ¶ 18.

Plaintiff responds that courts "regularly impose a production schedule greater than 500 pages per month upon the government in FOIA cases." [Dkt. 27 at 2]. Citing a case from the Northern District of Illinois, Plaintiff further contends that the Court should not take into account the effect that ordering DHS Privacy to process more than 500 pages per month will have on other FOIA requests because "the Court can only focus on the fairness of [the agency's] treatment of plaintiff, who made a proper and valid request for documents under the FOIA statute." *Id.* at 3 (emphasis omitted) (quoting Transcript of Proceedings at 5, *Boundaoui v. FBI*, No. 17 C 4782 (N.D. Ill., filed Oct. 2, 2017)). Plaintiff seeks to avoid a "long delay" in receiving its documents, and suggests that Mr. Holzer's affidavit is not credible. *Id.* at 3–4.

3

Plaintiff's position fails to take into account two long-standing principles that apply to FOIA cases in this Circuit. First, since 1976 at the latest, courts in this Circuit have considered the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material in a given case. *See, e.g.*, *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 612, 614 (D.C. Cir. 1976) (noting that "team to which Open America's request has been assigned is in various stages of processing 33 other projects, all of which were received prior to Open America's request," and that agency at issue had been "deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of requests within the [statutory] time limits"); *see also, e.g.*, *Energy Future Coalition v. Office of Mgmt. & Budget*, 200 F. Supp. 3d 154, 161 (D.D.C. 2016) (rejecting plaintiff's motion to mandate review of 1,000 documents per month, and taking into account increase in number of FOIA requests directed to agency, number of FOIA requests under review, and number of FOIA litigations in which agency involved); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (denying plaintiff's motion for preliminary injunction requesting immediate production of documents pursuant to FOIA request and weighing effect injunction would have on other FOIA requesters); *cf. Nat'l Sec. Counselors v. U.S. Dep't of Justice*, 848 F.3d 467, 471–72 (D.C. Cir. 2017) (in context of challenge to FOIA processing fees, stating policy of processing 500 pages per request per month "serves to promote efficient responses to a larger number of requesters").

Moreover, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims." *Energy Future Coalition*, 200 F. Supp. 3d at 159 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Plaintiff has presented no *evidence* to undermine Mr. Holzer's declaration. Rather, it cites scattered cases from various

4

jurisdictions in which courts have entered orders requiring agencies to process more than 500 pages per month and a couple of articles stating that review for the purposes of discovery in a civil action can progress significantly faster. [Dkt. 27 at 2–4]. Moreover, none of the cases concern FOIA requests for which DHS Privacy is responsible—they relate to Immigration and Customs Enforcement, the Department of Energy, the Department of Health and Human Services, and the FBA—and Plaintiff has made no attempt to show that the processing capabilities of those agencies are analogous to that of DHS Privacy. [Dkt. 27 at 2; Dkt. 26-1, ¶ 7]. The articles, as noted, concern document review in the context of conventional civil litigation and do not address reviewing and processing documents pursuant to FOIA [Dkt. 27 at 3–4], which "is distinct from civil discovery," with "different considerations determin[ing] the outcome of efforts to obtain disclosure," *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009).

To be sure, "a court . . . may use its equitable powers to require the agency to process documents according to a court-imposed deadline," *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014), but Plaintiff has not shown here that Defendant can or should process documents at a rate faster than 500 per month. For example, it has not asserted that it is entitled to expedited processing under FOIA or its implementing regulations, which can be available when a requester establishes (1) an imminent threat to the life or physical safety of an individual, (2) an "urgency to inform the public about an actual or alleged federal government activity," (3) a threatened loss of substantial due process rights, or (4) "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."[2] 6 C.F.R. 5.5(e)(1). Nor has it claimed—other than in vague and generalized statements that the material "is of significant importance to the debates of the day" and of "time-

---

[2] Expedited processing requires submission of a special request, along with "a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing." 6 C.F.R. § 5.5(e)(2)–(3).

sensitive importance" to debates over appropriations—that accelerated processing is necessary. *Cf., e.g., Clemente*, 71 F. Supp. 3d at 268–69 (ordering FBI to process 5,000 pages per month where requests involved serious allegations of widespread corruption in law enforcement, requester represented in litigation individuals who were victims of allegedly corrupt FBI agent, and requester provided medical records showing she had terminal illness); *cf. also, e.g., Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241, 247–48 (D.D.C. 2017) (ordering FBI to process 2,850 pages per month where request culled over 100,000 potentially responsive documents and agency administratively treated request as 372 distinct requests by assigning 372 different tracking numbers, but considered request as singular for purposes of 500-page-per-month rate of review).

At Defendant's proposed rate of 500 pages per month, the current universe of prioritized material will be processed in approximately seven months, rather than the three-and-one-half months Plaintiff urges. On this record, 500 pages per month is an appropriate rate of production.[3] This opinion should not be read to imply that Plaintiff's requests are insignificant or unimportant, or that a more robust schedule should not be ordered in a suitable case. Here, however, Plaintiff has not provided reasons that its requests should take precedence over the duly-made FOIA requests of others.

---

[3] In a number of recent cases in this District, a production rate of 500 pages per month has been approved. For example, in *Judicial Watch v. Dep't of Justice*, No. 16-cv-2046, the Honorable Tanya S. Chutkan approved such a rate over the plaintiff's objection. *Compare* Joint Status Report, ¶ 5, *Judicial Watch v. Dep't of Justice*, No. 16-cv-2046 (D.D.C. Jan. 6, 2017), *with* Joint Status Report at 1–2, *Judicial Watch v. Dep't of Justice*, No. 16-cv-2046 (D.D.C. Apr. 17, 2017), *and* Minute Order, *Judicial Watch v. Dep't of Justice*, No. 16-cv-2046 (D.D.C. Apr. 19, 2017). The Honorable James E. Boasberg has similarly approved a "500 page-per-month pace." *Republican Nat'l Comm. v. U.S. Dep't of* State, No 16-cv-486, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016). The Honorable Colleen Kollar-Kotelly did so twice in *Energy Future Coalition v. Office of Mgmt. & Budget*. *See Energy Future Coalition*, 201 F. Supp. 3d 55, 59–60 (D.D.C. 2016) ("OMB shall continue to review 500 documents per month with respect to Plaintiffs' request, in accordance with the Order issued on July 25, 2016.").

It is therefore

**ORDERED** that Defendant shall process records responsive to Plaintiff's FOIA requests at a rate of at least 500 pages per month; it is further

**ORDERED** that Defendant shall make its first production under this Order no later than March 30, 2018; it is further

**ORDERED** that Defendant shall produce responsive documents on a rolling basis every thirty days until production is complete; it is further

**ORDERED** that the parties shall file a joint status update on March 30, 2018, and every thirty days thereafter until production is complete or the Court orders otherwise.

**SO ORDERED.**


Date:  March 5, 2018

                                         _____
                                         G. MICHAEL HARVEY
                                         UNITED STATES MAGISTRATE JUDGE