In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1229

WILLIAM A. WHITE,

*Plaintiff-Appellant,*

*v.*

UNITED STATES DEPARTMENT OF JUSTICE, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 16-cv-948-JPG — **J. Phil Gilbert**, *Judge.*

SUBMITTED OCTOBER 6, 2021* — DECIDED OCTOBER 22, 2021

Before ROVNER, BRENNAN, and SCUDDER, *Circuit Judges.*

PER CURIAM. William White sued several federal agencies
under the Freedom of Information Act, 5 U.S.C. § 552, chal-
lenging the pace at which the agencies released responsive

---

* We have agreed to decide the case without oral argument because
the briefs and record adequately present the facts and legal arguments,
and oral argument would not significantly aid the court. FED. R. APP. P.
34(a)(2)(C).

records and their alleged failure to reveal other records. The district court granted summary judgment for the agencies. We affirm.

## I. Background

For years, White was involved in the white-supremacist movement. Along the way he committed various crimes and is now in federal prison. At the heart of his hundreds of FOIA requests lies a conspiracy theory: that the racist movement he joined is really an elaborate sting operation by the government. His requests went to four agencies under the Department of Justice: the Federal Bureau of Investigation; the United States Marshals Service; the Bureau of Alcohol, Tobacco, Firearms and Explosives; and the Federal Bureau of Prisons. The details of the requests to the ATF and Bureau of Prisons are not important to our analysis, so we focus on the requests to the FBI and Marshals Service.

Although the FBI told White it had located about 100,000 pages of potentially responsive records on its investigations into White and white-supremacist groups, this did not mean White immediately received 100,000 pieces of paper. Rather, the FBI told White that its policies authorized the review, redaction, and copying of 500 pages per month because finite resources must be reasonably apportioned among different requesters. *See* 5 U.S.C. § 552(a)(6)(D)(i); 28 C.F.R. § 16.5(b).

Meanwhile, the FBI explained, some of White's search terms yielded no results. And as to requests for records about certain people, the FBI furnished *Glomar* responses—so named for the *Hughes Glomar Explorer*, the submarine-recovery ship at the center of *Phillippi v. CIA*, 546 F.2d 1009, 1010–11 (D.C. Cir. 1976). A *Glomar* response announces that, to

protect interests recognized by FOIA, the agency will neither confirm nor deny the existence of responsive records. *Bassiouni v. CIA*, 392 F.3d 244, 246 (7th Cir. 2004). A *Glomar* response is proper if, for instance, confirming or denying that records exist would reveal whether someone is an informant or otherwise intrude unduly on privacy. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (concluding *Glomar* responses are appropriate to safeguard interests protected by FOIA exemptions); *see* 5 U.S.C. § 552(b)(6), (7)(C) (listing FOIA exemptions based on threats to privacy).

Here, the FBI told White it would not disclose the existence of records that might threaten a third party's privacy by connecting that person to the FBI—unless White provided either a written waiver from the named person, proof that the person had died, or a showing that the public interest in disclosure outweighs the privacy interests of the target person. White also could have overcome the *Glomar* responses by showing that the FBI previously acknowledged an informant relationship or the existence of related records. *See ACLU v. CIA*, 710 F.3d 422, 426–27 (D.C. Cir. 2013).

As for the Marshals Service, two requests are relevant here. White first sought records that named him. Then, a few years later, he asked for records on dozens of other people and organizations. But the Marshals Service told him that records about individuals would not be released without those individuals' consent; meanwhile, the agency's records were indexed by named individual, so records on organizations were unavailable. On the other hand, records pertaining to White himself were available—the Marshals Service reported finding 1,500 pages of them—but no copies were sent to

White until October 2020, years after the 2016 filing of this lawsuit.

The lawsuit claimed that the agencies conducted inadequate searches, improperly withheld documents, and failed to promptly provide copies. On the parties' cross-motions, the district court granted summary judgment for the agencies.

First, the court found, based on affidavits by agency personnel, that the searches were reasonably calculated to locate responsive records. And White had not displaced FOIA's presumption of good faith regarding these searches because his allegations of bad faith boiled down to speculation and conspiracy theories.

Second, the court upheld the FBI's *Glomar* responses. To be sure, some people named by White had themselves asserted, in other settings, that they were affiliated with the FBI. So, White reasoned, their privacy interests were diminished. But the FBI had not itself confirmed those individuals' assertions, nor had White given the FBI any of the information it requested to challenge its *Glomar* responses. *See N.Y. Times v. CIA*, 965 F.3d 109, 121 (2d Cir. 2020) (acknowledgement of affiliation must come from the agency itself); *cf.* 5 U.S.C. § 552(c)(2) (exempting from FOIA any third-party request for information about an informant unless status as an informant has been "officially confirmed"). As for White's argument that the public interest supported disclosure, the court concluded that pursuing White's conspiracy theories to cast doubt on his criminal convictions was not a substantial public interest.

Third, the court rejected White's argument that the FBI's redaction-and-copying rate of 500 pages per month amounted

to an improper withholding of documents. White's request placed a substantial burden on the FBI, and neither FOIA's text nor the public interest required faster production of these 100,000 responsive pages—especially at the expense of slowing responses to other requesters.

After this adverse judgment, White moved for costs, arguing that his suit had substantially prevailed because it prompted the agencies to respond to his requests. But the court denied the motion because the Marshals Service alone was delinquent in responding—and the 1,500 pages held by that agency were an insubstantial piece of the litigation when measured against the 100,000 pages of FBI documents. In any event, the court alternatively exercised its discretion to refuse an award of costs because the transparent purpose of White's FOIA requests and lawsuit was to harass the government, not to obtain information useful to the public.

White then filed a timely motion to reconsider under Rule 59(e) of the Federal Rules of Civil Procedure. Although he himself had sought summary judgment, he now argued that the court should not render a final decision until the FBI had redacted, copied, and sent all 100,000 pages of responsive records—a process that will take more than a decade. He further claimed that the FBI wrongly omitted records on one of the groups he identified—the Aryan Strike Force—since an FBI agent testified in 2018 about an investigation into the group's members. The court, however, denied the motion on the grounds that it need not retain jurisdiction to monitor the FBI's production schedule and that the time for White to make these arguments was in the summary-judgment papers, not a post-judgment motion.

White next moved to hold the Marshals Service in contempt for telling the court in 2018 that it would soon start sending him records, whereas by 2020 White still had received nothing. The Marshals Service responded that the promise was made in good faith but inadvertently broken because of staff turnover and clerical errors. (The agency sent White his documents shortly after he filed his contempt motion.) The court, in turn, admonished the Marshals Service for these missteps, but determined that no judicial order had been violated and no contempt sanction was warranted.

Finally, White moved for relief from judgment under Rule 60(b). He posited several new conspiracies and demanded documents related to them. While that motion was pending, he filed a notice of appeal listing the entry of summary judgment and the orders issued before the appeal deadline. The district court later denied White's Rule 60(b) motion.

## II. Discussion

At the outset, we agree with the agencies' contention that we lack authority to review the denial of Rule 60(b) relief here. Because White filed his notice of appeal before the court disposed of his Rule 60(b) motion, he needed to either amend his existing notice of appeal or file a new notice of appeal to include the later decision. *See* FED. R. APP. P. 4(a)(4)(B)(ii); *Ammons v. Gerlinger*, 547 F.3d 724, 726 (7th Cir. 2008). He did neither, so that order is not before us.

Instead, the first issue is whether the district court improperly entered judgment and relinquished jurisdiction before the FBI sent White all documents responsive to his FOIA requests. Judicial authority to devise a FOIA remedy depends on a finding "that an agency has (1) 'improperly';

(2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). Here, the FBI's 500-page-per-month schedule did not amount to an improper withholding of records, and the district court was given no evidence that the agency is not meeting that schedule.

To be sure, White's FOIA records must be released "promptly." 5 U.S.C. § 552(a)(3)(A). But FOIA does not define "promptly," and indeed it invites agencies to establish policies for equitably processing larger requests. *Id.* § 552(a)(6)(D)(i). And the FBI has held that large requests should be subject to a 500-page-per-month production rate. *See* 28 C.F.R. § 16.5(b). That kind of incremental-release schedule promotes efficiency and fairness by ensuring that the biggest requests do not crowd out smaller ones unless extraordinary circumstances warrant expedited production. *Nat'l Sec. Counselors v. DOJ*, 848 F.3d 467, 471–72 (D.C. Cir. 2017). We will not interfere with the agency's policy. *Cf. White v. FBI*, 851 F. App'x 624, 626 (7th Cir. 2021) (affirming denial of White's preliminary-injunction request seeking faster production in another case because "the district court reasonably concluded that the FBI was not improperly withholding documents by following its statutorily permissible policy").

Rather than engage with this policy, White argues that the district court's real reason for refusing to order faster production is its moral disapproval of his stated public interest: proclaiming that the white-supremacist movement is an elaborate sting operation. Although White denies that he seeks "expedited"—as opposed to routine, "prompt"—production, his thrust is that he is entitled to faster production because he is pursuing a topic of widespread interest as contemplated by 5

U.S.C. § 552(a)(6)(E)(i) and 28 C.F.R. § 16.5(e)(1)(iv). But White's pursuit is not of widespread interest; his principal aim is to cast doubt on his own criminal convictions by suggesting that he was entrapped or framed. *See Antonelli v. FBI*, 721 F.2d 615, 619 (7th Cir. 1983) (exploring whether Antonelli's conviction was obtained in violation of Constitution did not constitute a "public" interest under FOIA).

White next argues that the agencies did not conduct reasonable searches. But each agency submitted an affidavit detailing the FOIA process and the searches here, and these affidavits entitle the agencies to a presumption of good faith. *See Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015). At summary judgment, White could prevail only by providing countervailing evidence of unreasonably overlooked materials. *Id.*

To do that, he needs more than speculation that additional documents must exist. *Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992). To be sure, White contends that testimony by an FBI agent regarding an investigation into members of the Aryan Strike Force indicated the FBI must have had records on the group. *See generally United States v. Lough*, No. 4:17-CR-00139, 2019 WL 1040748, at *2 (M.D. Pa. Mar. 5, 2019). But that testimony detailed an investigation that occurred *after* the FBI responded to White's FOIA request. White also says two documents prove the ATF investigated him and thus should possess substantial records. But neither document even alludes to an ATF investigation of him: one, an FBI report, merely notes that ATF sent agents to a rally that White organized; the other, a Marshals Service report, detailed an FBI—not ATF—investigation of White. White further asserts that the Marshals Service, contrary to its statements, had the ability to

search its records for the names of organizations, not just individuals. Again, however, the document he cites as evidence (a declaration in opposition to White's contempt motion, explaining that district offices are tasked with searching for records of individuals incarcerated in their districts) says no such thing.

White also argues that the FBI improperly used *Glomar* responses for four people who had previously asserted a link to the FBI. But the supposed links were never asserted *by the FBI* and do not constitute official disclosures. *See N.Y. Times*, 965 F.3d at 121; *cf.* 5 U.S.C. § 552(c)(2) (exempting records of informants unless their status has been "officially confirmed"). Informally confirming some connection to the FBI may have diminished these individuals' privacy interests, *see Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1092 (D.C. Cir. 2014), but it does not extinguish them for all purposes. Further, White provides no clear public interest to overcome even the diminished privacy interests here. *See Antonelli*, 721 F.2d at 619.

White next takes issue with the district court's decision not to award costs against the agencies. To obtain costs in a FOIA case, the plaintiff must "substantially prevail." 5 U.S.C. § 552(a)(4)(E). But even then, the district court has discretion to deny costs after considering, among other factors, the litigation's benefit to the public. *Stein v. DOJ & FBI*, 662 F.2d 1245, 1262 (7th Cir. 1981). Here, even if we might debate whether White substantially prevailed against the Marshals Service, the district court properly exercised its discretion to deny White's request because his purpose for seeking the records—chasing his conspiracy theory that the government

created the white-supremacy movement to entrap people like him—has provided no public benefit.

Finally, White argues that both the Marshals Service and FBI should be sanctioned. He says that the Marshals Service lied when it told the court in 2018 that it had resumed processing White's request and would finish soon, though no records were furnished until 2020. But the Marshals Service explained that it meant to abide by the self-imposed July 2018 deadline, and staff turnover and errors caused it to push that deadline back. The district court was not required to treat this as willful misconduct. White also says the FBI lied about not having records on the Aryan Strike Force and about not having investigated him. Yet, as previously noted, there is no indication that the FBI had files on the Aryan Strike Force at the time it responded to White's FOIA requests. Further, the FBI never denied that it investigated him; rather, it denied, as fanciful, White's assertions that the government fabricated the modern white-supremacy movement and used it to frame him.

\* \* \*

We conclude by commending the district court on its handling of this case. The judge carefully parsed White's numerous and wide-ranging arguments and explained the result in a series of thorough and thoughtful orders.

We have considered White's other arguments, and none has merit.

AFFIRMED